**E-FILED on** 1/9/12

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| YU-WEN LU,<br><br>       Plaintiff,<br><br>    v.<br><br>UNUM GROUP,<br><br>       Defendant. | No. 09-cv-03080 RMW<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT<br><br>**[Re Docket No. 71]** |

This is an appeal under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., from the denial of disability benefits allegedly owed to plaintiff Yun-Wen Lu ("plaintiff") by defendant insurer Unum Group ("defendant"). Defendant moves for summary judgment, arguing that the denial of benefits was not an abuse of its discretion under the terms of coverage. Plaintiff, who is *pro se*, did not file a written opposition to the motion. For the reasons below, the court grants the motion for summary judgment.

## I. BACKGROUND

In 1997, Cisco Systems, Inc. ("Cisco") obtained a group long term disability plan (the "Plan") from defendant. Administrative Record ("AR") 31. The Plan provides long term disability

benefits to eligible participants. *Id.* at 33. Under the Plan, certain disabilities are subject to a limited pay period. Relevant to this appeal, the Plan provides that "disabilities, due to sickness or injury, which are primarily based on self-reported symptoms, and disabilities due to mental illness have a limited pay period up to 24 months." *Id.* at 50.

Plaintiff was a software engineer at Cisco and a participant in the plan. *Id.* at 657. On or around December 3, 2002, plaintiff sought medical leave from her employer. *Id.* at 164. In connection with her request, she was evaluated by psychologist Teresa Keith, who diagnosed plaintiff as suffering from "Major Dep[ression], Atypical v. BiPolar Disorder vs. Delusional Disorder/Somatic Type" and concluded that she was unable to work. *Id.* Plaintiff then applied for and received short-term disability benefits. *Id.* at 1969. Beginning on February 19, 2003, she went on extended medical leave. *Id.* at 1979.

After her initial diagnosis, plaintiff met with a number of mental health professionals, including psychologist Arlene Unger. *Id.* at 131-38. Dr. Unger attempted to steer plaintiff to psychiatric care, but plaintiff was not receptive to the idea of using medication. *Id.* at 134. On or about September 10, 2003, defendant received plaintiff's claim for long term disability benefits. *Id.* at 28. In reviewing plaintiff's claim, defendant sought records from plaintiff's health care providers. On November 12, 2003, Dr. Unger completed a Mental Status Supplemental Questionnaire, diagnosing plaintiff, among other things, as "296.33 – Major Depression with Psychotic features – paranoia." *Id.* at 134. On December 3, 2003, plaintiff's claim for long term disability benefits was approved. *Id.* at 185-87. Largely without interruption, defendant paid plaintiff's long term disability benefits for a total of 24 months. *Id.* at 713-18.[1]

On January 11, 2005 and April 6, 2005, defendant advised plaintiff that her claim was subject to the Plan's 24-month mental illness cap. *Id.* at 784-85, 805-07. Plaintiff was told to notify defendant if she believed she was disabled due to a "physical condition." *Id.* Defendant independently requested and received notice from Dr. Fisher, plaintiff's latest treating physician, that

---

[1] Plaintiff's benefits were discontinued in March 2004 when she failed after a number of requests to provide proof of continued disability and treatment, but were later reinstated. *See* AR 185-87. The discontinuance of benefits in 2004 is not at issue in this case.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 09-cv-03080 RMW
EDM                                    2

her disability was the result of anxiety and depression and that he was not aware of any physical conditions that would preclude plaintiff from working. *Id.* at 814-15.

On July 7, 2005, plaintiff provided a note from chiropractor Dr. Krimmel indicating that plaintiff was "physically disabled" and was being treated for "severe pain ... in the cervical, thoracic and lumbar spine." *Id.* at 877. Defendant requested a review of plaintiff's file, including Dr. Krimmel's note, by two other medical professionals, Dr. Kenneth Malkes and Dr. Susan Benson, both of whom opined that plaintiff's disability was the result of a mental illness rather than a physical condition. *See id.* at 951-52, 911, 13. Dr. Benson further noted that plaintiff's "subjective complaints" of pain were not supported by any "confirmatory testing." *Id.* at 913.

On September 27, 2005, defendant informed plaintiff that her benefits were being discontinued pursuant to the Plan's 24-month cap for disabilities based on mental illness and self-reported symptoms. *See id.* 967-71. The letter noted:

> [Y]ou had Physical therapy in 1/05 for a 1 week history of upper and lower back pain after acupuncture and you improved. This 1 week history does not support chronic disabling pain. Also of note is your treatment in 2005 with a chiropractor, but no new diagnostic testing such as EMG/Nerve condition study, MRI's or a serial spine range of motion measurement was completed. With the lack of testing and your Physical Therapy records not documenting chronic disabling pain, the records on file do not support a physical disability.
>
> In summary, your claim was initially approved for a Psychiatric condition … As of 5/31/05 you received the entire 24 months of payments allowed for a mental illness … Our On-Site Physicians in Internal Medicine do not support any physically disabling condition that would prevent you from returning to work.

*Id.* at 969.

Plaintiff appealed defendant's decision on November 21, 2005. *Id.* at 996. Subsequently, defendant sought additional medical information from a number of plaintiff's treating physicians. On December 10, 2005, plaintiff faxed defendant a Workers Compensation Medical Evaluation Report prepared by psychiatrist Ron Curry. Plaintiff highlighted the following portions of the report as being "about my physical disability:" (1) "She did have some degree of somatization, but this had been noted by others;" (2) "Her current Beck-Depression Inventory indicated only modest depressions, low to low-middle levels of depression. The Whaler reflected somatization, which would be expected;" (3) "DIAGNOSIS: Axis 1 BIPOLAR DISORDER – SEVERE, PSYCHOTIC

FEATURES, PARTIAL REMISSION …. PSYCHOLOGICAL FACTORS AFFECTING PHYSICAL CONDITION –RIGHT SIDE PAIN." *Id.* at 1073.  The report further explained: "People who 'somaticize' often displace emotional problems and conflicts onto bodily preoccupations in order to distance themselves from painful feelings such as anger, guilt, shame and responsibility." *Id.* at 1090.

On December 12, 2005, plaintiff sent a seven-page, handwritten fax to defendant indicating that her physical pain was a "consequence" of "severe mental illness." *Id.* at 1132. On December 22, 2005, defendant informed plaintiff that it required more time to process her appeal because it has not yet received the requested information from her doctors. *Id.* at 1146. On January 4, 2006, plaintiff faxed records from Dr. Krimmel to defendant. In summary, his report stated:

> Yun-Wen Lu has been seen for moderate cervical, thoracic and lumbar spine pain and spasm that radiates into the legs, and arms. The patient is currently coming in for treatment one to two times per week and is receiving massage, electrical muscle stimulation, heat and therapeutic exercise. The patient's condition is made worse when working at a computer for long periods of time as well as stress. Her current job duties require her to complete tasks that exacerbate her condition making her unable to return to her current job at this time.

*Id.* at 1182.

Dr. Krimmel's report did not include treatment notes, which defendant requested but did not receive until March 3, 2006. *Id.* at 1264-68. Defendant next submitted plaintiff's entire claim for an independent medical review. One of the reviewers, Dr. Gary Greenhood, noted:

> While the claimant has complained of diffuse pain, no objectively abnormal findings support the existence of pain. That is, an electrodiagnostic study of the right upper and lower extremities was allegedly normal. No reports of an X-ray, MRI scan or CT scan are submitted. No focally abnormal neurological findings are presented. The claimaint's pain is self-reported and not verifiable using tests, procedures, or clinical examinations standardly accepted in the practice of medicine.

*Id.* at 1315.

Dr. Krimmel was given an opportunity to review Dr. Greenhood's report, and apparently challenged the conclusion that no "focally abnormal neurological findings were presented" with the succinct note: "see exam form in records." *Id.* at 1354. However, upon further analysis of Dr. Krimmel's notes, Dr. Greenhood concluded that Dr. Krimmel's testing of plaintiff's reflexes, strength and senses focused solely on plaintiff's subjective, self-reported responses. *Id.* at 1377-78. He

therefore indicated that his opinions remained "unchanged." *Id.* On May 10, 2006, defendant advised plaintiff that the review of her appeal was nearly complete. *Id.* 1373.

Defendant then sought a second opinion from neurosurgeon Ronald Birkenfeld, who concluded that "the complaints of spinal axis pain … had no explanation, based on any objective neurological evaluation … [plaintiff's] symptoms (again, excluding the psychiatric diagnosis) are purely subjective and unsubstantiated by any objective … data." *Id.* at 1435-36.

On June 8, 2006, defendant denied plaintiff's appeal. This lawsuit followed.

## II. DISCUSSION

### A. Standard of review

A challenge to an ERISA plan's denial of benefits is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the plan confers discretionary authority, then the standard of review shifts to abuse of discretion. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (citing *Firestone*, 489 U.S. at 115). While there are no "magic words" conferring discretion on the plan administrator, the Ninth Circuit has found plan language granting the administrator the "power to interpret plan terms and to make final benefits determinations" sufficient to establish discretionary authority. *Abatie*, 458 F.3d at 963 (citing *Bergt v. Ret. Plan for Pilots Employed by Markair, Inc.*, 293 F.3d 1139, 1142 (9th Cir. 2002) and *Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1159 (9th Cir. 2001)).

The Plan at issue here vests the plan administrator with "discretionary authority to determine [a claimant's] eligibility for benefits and to interpret the terms and provisions of the policy." AR 40. The court finds this language sufficient to confer discretionary authority, and therefore reviews defendant's decision for abuse of discretion.[2] Accordingly, the interpretation of the plan 'will not be

---

[2] Plaintiff, who is *pro se* and has not opposed defendant's motion for summary judgment, did not argue that any "procedural irregularities," such as defendant's delay for more than six months in resolving plaintiff's appeal, are sufficient to shift the standard of review to de novo. *See, e.g.*, *Kowalski v. Farella, Braun & Martel, LLP*, No. C-06-3341, 2007 U.S. Dist. LEXIS 56005 (N.D. Cal. July 23, 2007) (finding that a de novo standard applied where the plan administrator failed to issue a decision on plaintiff's appeal). Given that defendant issued a final decision on plaintiff's appeal before the initiation of this lawsuit and appears to have made a good faith effort to subject her claim to a

disturbed if reasonable.'" *Salomaa v. Honda Long Term Disability Plan*, 637 F.3d 958, 966 (9th Cir. 2011) (quoting *Conkright v. Frommert*, 130 S. Ct. 1640, 1651 (2010)).

### B.     Defendant's decision to apply the 24-month cap was reasonable

Under the Plan, plaintiff's benefits were limited to a 24 month pay period if her disability was "primarily based on self-reported symptoms" or "mental illness." AR 50. Plaintiff appears to argue that her disability was the result of an objectively verifiable physical condition, and therefore not subject to the 24-month cap.

There is substantial evidence supporting defendant's determination that plaintiff's disability resulted from a mental illness, rather than a physical condition. The Plan defines "mental illness" as "a psychiatric or psychological condition regardless of cause such as schizophrenia, depression, manic depressive or bipolar illness, anxiety, personality disorders and/or adjustment disorders or other conditions." *Id.* at 66-68. Plaintiff was initially granted medical leave as a result of depression and anxiety. Her first diagnosis, issued by Dr. Keith in 2002, indicated that she suffered from "Major Dep[ression], Atypical v. BiPolar Disorder vs. Delusional Disorder/Somatic Type." *Id.* at 164. A second report issued almost a year later by Dr. Unger diagnosed plaintiff with "Major Depression with Psychotic features – paranoia." *Id.* at 134-35. Dr. Fisher agreed in 2005 that plaintiff's disability was the result of anxiety and depression and that he was not aware of any physical conditions that would preclude her from working. *Id.* at 814-15. Reports by three independent physicians over the course of two years indicating that plaintiff's disability stemmed from mental illness justify a finding that plaintiff's condition was subject to the 24-month cap.

Plaintiff pointed to the report prepared by Dr. Curry as supporting her claim that she suffered from a physical disability. However, Dr. Curry's report emphasized that plaintiff's physical symptoms were the result of "somatization," meaning the "displace[ment] emotional problems and conflicts onto bodily preoccupations." *Id.* at 1090. That is, in Dr. Curry's opinion, plaintiff's

---

comprehensive and fair review process, the court finds that it is unlikely that the delay would shift the standard of review. *See Gatti v. Reliance Std. Life Ins. Co.*, 415 F.3d 978, 985 (9th Cir. 2005) (Procedural violations of ERISA may shift the standard of review from abuse of discretion to de novo only where such violations are "so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm."). Nevertheless, the court will review the denial of plaintiff's claim with a "heightened degree of skepticism." *Hinz v. Hewlett Packard Co. Disability Plan*, 10-cv-2633, 2011 U.S. Dist. LEXIS 38644 (N.D. Cal. Mar. 30, 2011).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 09-cv-03080 RMW
EDM                                                6

1  reported physical symptoms were the result of her mental illness, not an independent physical cause.
2  Dr. Curry's diagnosis that plaintiff tended to "somaticize" was echoed by Dr. Keith. *See id.* at 164.
3  Indeed, plaintiff herself indicated that her physical pain was a consequence of "severe mental
4  illness." *Id.* at 1132.

5  Plaintiff also appears to rely on Dr. Krimmel's report that she was being treated for "moderate
6  cervical, thoracic and lumbar spine pain and spasm that radiates into the legs, and arms." *Id.* at 1179-
7  83. However, Dr. Krimmel did not contradict Dr. Curry's opinion that plaintiff's physical symptoms
8  were the result of somatization. Given such evidence, defendant's determination that plaintiff's
9  disability resulted from her mental illness does not leave the court with "a definite and firm
10 conviction that a mistake has been committed." *Salomaa v. Honda Long Term Disability Plan*, 637
11 F.3d 958, 967 (9th Cir. 2011) (internal citations omitted).

12 Furthermore, to the extent that plaintiff suffers from a physical condition that makes it
13 impossible for her to work, it was reasonable for defendant to conclude that such a condition was
14 "primarily based on self-reported symptoms" and therefore subject to the 24-month cap. Under the
15 Plan:

> "Self-reported symptoms means the manifestations of your condition which you tell your physician, that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headaches, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy."

*Id.* at 66-68.

Here, both Dr. Greenhood and Dr. Birkenfeld concluded that plaintiff's symptoms were "subjective" and "self-reported." Dr. Greenhood further noted that no X-ray, MRI scan or CT scan had been submitted, and that the only "electrodiagnostic study" conducted was "allegedly normal." *Id.* at 1313-16. It appears that the only evidence even arguably supporting a finding that plaintiff's symptoms were objectively verifiable is the fact that Dr. Krimmel crossed out Dr. Greenhood's conclusion that no "focally abnormal neurological findings were presented" and noted: "see exam form in records." *Id.* at 1354. However, Dr. Greenhood reviewed Dr. Krimmel's notes, and determined that Dr. Krimmel's testing had probed only plaintiff's subjective responses. Thus, it is unclear whether Dr. Krimmel would dispute Dr. Greenhood's conclusion that plaintiff's condition

was "primarily based on self-reported symptoms." Certainly, Dr. Krimmel did not purport to have conducted any specific objective medical testing, such as x-rays, MRI scans or CT scans. Furthermore, to the extent that there is a difference of opinion between a claimaint's treating physician and independent medical reviewer, it is generally not an abuse of discretion to adopt the independent medical reviewer's conclusion. *See, e.g.*, *Rosenthal v. First UNUM Life Ins. Co.*, No. 00 Civ 3204, 2002 WL 975627, *7 (S.D.N.Y. May 9, 2002) (holding that it was not an abuse of discretion to deny benefits despite an opinion from plaintiff's treating cardiologist that he was disabled because the administrative record contained an independent medical opinion and in-house medical reviews of plaintiff's file that supported the administrator's determination).

    In this case, the opinions of at least eight physicians, several of whom treated plaintiff directly, support defendant's determination that plaintiff's disability was subject to the 24-month cap. Defendant developed a comprehensive record, offered plaintiff several opportunities to supplement that record, and subjected plaintiff's claims to multiple in-house reviews. *See Anderson v. Suburban Teamsters of N. Ill. Pension Fund Bd. of Trs.*, 588 F.3d 641, 649 (9th Cir. 2009) (A plan administrator abuses its discretions when "it renders a decision without any explanation, construes provisions of the plan in a way that conflicts with the plain language of the plan, or fails to develop facts necessary to its determination."). The court is mindful of the fact that plaintiff is proceeding *pro se*, and has not filed an opposition to defendant's motion raising arguments in support of her position. However, given the court's own review of the record and the fact that plaintiff has been given ample opportunity to respond, including multiple continuances, the court is comfortable concluding that defendant did not abuse its discretion in denying plaintiff's claim for benefits. Accordingly, defendant's motion for summary judgment is granted.

### III. ORDER

    For the foregoing reasons, the court grants defendant's motion for summary judgment.

DATED:   January 9, 2012

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
No. 09-cv-03080 RMW
EDM                                                              9